UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| HENRY A KORSZUN; WOJTEK W. BOROWSKI and COMPUCLOZ CORPORATION<br><br>Plaintiffs,<br><br>vs.<br><br>PUBLIC TECHNOLOGIES MULTIMEDIA, INC., J.C. PENNEY COMPANY, INC.; MATTEL, INC. and/or BRODERBUND SOFTWARE, INC.; and LAND'S END, INC.,<br><br>Defendants. | Civil Action No.<br>300CV327 (JCH)<br><br><br><br><br>February 3, 2004 |

**PLAINTIFFS' SUR-REPLY REGARDING DEFENDANTS' MOTION**
**FOR AWARD OF ATTORNEYS' FEES**

Defendants' reply relies on the Court's decision on Defendant's Motion for Summary Judgment and argues that Plantiffs acted in bad faith in pursuing this litigation, as if the result were foreordained all along. This oversimplification is not consistent with the facts of the case nor is it consistent with the law.

Defendants argue that Plaintiffs "blindly" believed that Mr. Korszun had a broad patent and that there was infringement. (Reply at 2-5). Mr. Korszun certainly believed he had invented the concept of a digital dressing, allowing a shopper to input measurements to define a digital body then "try on" a digital garment on the defined body with consideration of how the garment will look on the specific defined body. None of the prior art patents of record disclose this underlying concept. The prior art patents

in the patent file history relate to tools for designing clothing or for combining images of people and clothing. Defendants have tacitly recognized the fact of the unique vision of Mr. Korszun, as they have not made any effort to assert the invalidity of Mr. Korszun's patent. They have offered no expert reports on invalidity, and they have not presented any motions on the issue. Mr. Korszun's belief in his patent was amply justified both at the time of filing of the suit and at the time of summary judgment.

Defendants cast aspersions on Mr. Korszun's efforts to obtain information about how the MVM process works, saying that he "solicited information primarily to gain ammunition to support his claims of infringement." (Reply at 3). However, this is exactly what a patent owner is supposed to do – to exercise due diligence and to try to determine how a prospective defendant's process works before filing suit. Defendants, in their excerpt of Mr. Korszun's testimony, fail to include the net result of his efforts, which was that MVM was not willing to disclose any specific details of its process. (J.A. Ex. 14 [Korszun Tr. at 166:17-19]).

Defendants suggest that Plaintiffs have presented shifting theories of infringement. (Reply at 5-7). Plaintiffs have had a very consistent infringement theory since 2000 (as previously briefed in "Plaintiffs' Opposition To Motion For Summary Judgment of NonInfringement" [Dkt 71] at 20-21). Plaintiffs' interrogatory responses back in 2000 stated the same basic infringement theory as was argued in plaintiff's opposition to defendant's motion for summary judgment of non-infringement. Plaintiffs, in their interrogatory responses, depositions and motion papers have been very consistent.

2

Defendant's arguments about inconsistency all relate to the opinion of Dr. Frederick Sayward, an independent expert witness engaged by Plaintiffs. Dr. Sayward developed a claim interpretation and infringement analysis based on that claim interpretation, which was an alternative theory to that originally presented by Plaintiffs in their discovery responses. Dr. Sayward's claim interpretation became moot when the Court issued its "Markman Ruling." [Docket No. 55], and Plaintiffs relied, as they had all along, on their original theory of infringement.

Defendants also assert that Plaintiffs should not even have considered the possibility of asserting a claim of infringement under the Doctrine of Equivalents in view of the Federal Circuit's initial en banc decision in *Festo Corporation v. Shoketsu Kogyo Kabushiki Co., Ltd.* (See D'Amore Declaration Exhibit A). But this decision was subsequently vacated by the Supreme Court (*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 741 (2002).) Plaintiff should not be blamed for refusing to give up its claim of equivalents infringement when the Supreme Court vacated the very decision, which Defendants relied on. In fact, given the unpredictability of Federal Circuit decisions on issues of claim interpretation and equivalents, and given the technology in issue and the complex claim language of the patent in issue, it is extremely difficult to say that there is any discernable "bright line" defining unreasonableness in this action.

Defendants concede as much in their Reply, at n. 4, where they argue that even if the Court should not award the defendants their attorney's fees for the *entire* litigation, that they should at least be awarded their fees from the date of the *Markman* Ruling. Defendants are acknowledging that the issues of infringement of the complex claim in the patent in suit were not clearcut. The ambiguities and uncertainty of understanding the

3

patent claim meaning became more definite upon entry of the *Markman* Ruling, but even then, neither the issue of infringement, nor the issue of the potential of infringement under the Doctrine of Equivalents had been decided.

Defendants' assertions that Plaintiffs unreasonably persisted in seeking a decision on their claim of infringement under the Doctrine of Equivalents because of the *Festo* case is especially unfounded. The Federal Circuit's decision on remand from the Supreme Court was not even entered until September 26, 2003, three months after this Court's June 12, 2003 decision on Defendants' Motion for Summary Judgment.

In the same way, the issue of infringement was and is not so clearcut that Plaintiffs can be said to have adhered to "manifestly unreasonable" positions regarding infringement. Plaintiffs reasonably urged a finding of infringement because Defendants' "My Virtual Model" system provides a system that operates to give the user the same experience as is provided by the patented system. Defendants sought to avoid infringement by arguing that the Korszun patent is limited to two-dimensional images, and that their process involves three-dimensional images, and thus that it is completely different from the patent. Plaintiff believed that the patent was not limited to any particular data format, and that the distinction is meaningless because any three-dimensional process is also a two-dimensional process, for example, in the MVM process, when the final images are captured and subsequently displayed. It is clear that in the prosecution history and the prior art, neither the Examiner nor Mr. Korszun made any distinctions between two-dimensional and three-dimensional images and processes. They were regarded as interchangeable. Plaintiff, in opposing Defendants motion for summary judgment believed that there were genuine issues of material fact for

4

trial, in particular: (1) a genuine issue of material fact whether or not the two dimensional texture bitmaps of the model bodies in the accused MVM system meet the claim element of a "model image layer having a human shape and comprising at least one predetermined body measurement;" and (2) a genuine issue of material fact whether or not the garment draping process in the accused MVM system meets the claim element of a determination of "ease" to produce a garment of the desired appearance.  These were not issues where the answer was so obvious that it was "manifestly unreasonable" to assert infringement.

Defendants quarrel with the notion that since Plaintiff was deprived of access to the full details of their process, the award of attorney's fees against Plaintiffs is inappropriate.  Defendants glibly imply that counsel has a responsibility to file a dismissal of suit, *sua sponte*, even if the client does not consent, and even if the client is not permitted to know why.  This assertion is so contrary to the standards of both due process and professional responsibility that it does not merit a response.

MVM complains of suffering injury to its business and investor relationships, and to incurring more than $800,000 of expenses in the suit.  While this is certainly a typical expense in a patent suit, this case was not extremely contentious nor did it involve a substantial amount of discovery.  MVM's choice of New York counsel to defend a Connecticut case no doubt increased the litigation expense (which are much higher than Plaintiff's expenses).  The expense of suit argument should not be given any weight when most of the cost seems a result of MVM's decision to choose an expensive course of defense.

The patent statutes provide that reasonable attorney's fees may be awarded at the court's discretion in "exceptional" patent infringement actions. 35 U.S.C. § 285. "Exceptional" actions include cases brought in bad faith or those involving fraud or inequitable conduct by the patentee in procuring the patent. *Cambridge Products, Ltd. v. Penn Nutrients, Inc.,* 962 F.2d 1048, 1051 (Fed.Cir. 1992); *Standard Oil Co. v. American Cyanamid Co.,* 774 F.2d 448, 455 (Fed.Cir. 1985). Cases brought in bad faith include misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit. *Id.* "A frivolous suit is one in which the patentee knew or, on reasonable investigation, should have known, was baseless." *Haynes International, Inc. v. Jessop Steel Co.,* 8 F.3d 1573 (Fed.Cir. 1993). Here, Defendants have not argued that the suit, as filed, was baseless. Their arguments instead assert that during the course of litigation, and particularly as of the time of the *Markman* Ruling, that Plaintiffs should simply have packed their bags and gone home. The fact that the Ruling precluded one theory of literal infringement (but did not preclude that same theory as a Doctrine of Equivalents infringement) simply does not create the factual circumstance of actual wrongful intent or of gross negligence required for an award of attorneys fees. (See *Reactive Metals & Alloys Corp., v. ESM, Inc.,* 769 F.2d 1578, 1583 (Fed.Cir.1985); *Hycor Corp. v. Schlueter Co.,* 740 F.2d 1529, 1540, (Fed.Cir. 1984)). This is not a case where there has been an "utter lack of all care." Defendants have not met their burden of establishing the "exceptional" nature of the case by clear and convincing evidence viewed in light of the totality of the circumstances. *Eltech Systems Corp. v. PPG Industries, Inc.,* 903 F.2d 805, 811 (Fed.Cir. 1990); *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.,* 15 F.3d 1573, 1579 (Fed.Cir. 1993).

For all of the above reasons, there is no basis to conclude that the present action was filed, or has been prosecuted in bad faith or vexatiously. Defendants' Motion For Attorneys Fees should be denied.

Respectfully submitted,

_____
Stephen P. McNamara, Esq. - ct01220
ST. ONGE STEWARD JOHNSTON & REENS
986 Bedford Street
Stamford, CT 06905
Tel. (203) 324-6155
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing

PLAINTIFFS' SUR-REPLY REGARDING DEFENDANTS' MOTION
FOR AWARD OF ATTORNEYS' FEES

is being served on this date, by first class mail, postage prepaid, on the following counsel for defendants:

William H. Bright, Esq.
McCarter & English, LLP
CityPlace I, 36th Floor
185 Asylum Street
Hartford, CT 06103

And to

Matthew D'Amore, Esq.
Morrison & Foerster LLP
1290 Avenue of the Americas
New York, New York 10104-0012

Date: February 3, 2004

_____
Stephen P. McNamara

7